# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PROTOSTAR LTD, *et al*., | Case No. 09-12659 (MFW) |
| Debtors. | Jointly Administered |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PROTOSTAR LTD, et al., | Adv. Pro. No. 09-52279 (MFW) |
| Plaintiff, | **AMENDED ADVERSARY COMPLAINT** |
| v. | |
| THE BANK OF NEW YORK MELLON (as successor in interest to THE BANK OF NEW YORK), as Trustee and Collateral Agent, and WELLS FARGO BANK, NATIONAL ASSOCIATION, as Administrative Agent, BEACH POINT CAPITAL MANAGEMENT, LP, BLACKROCK FINANCIAL MANAGEMENT, INC., FARALLON PARTNERS, L.L.C., OCTAVIAN ADVISORS LP, THIRD POINT LLC, WEST FACE CAPITAL INC. and ABC COMPANIES 1-10, | |
| Defendants. | |

Plaintiff, the Official Committee of Unsecured Creditors ("Plaintiff" or the "Committee"), on its own behalf and on behalf of and as the representative of the Debtors' chapter 11 estates (collectively, the "Debtors" or "ProtoStar")[1], by way of this amended

---

[1]    The Debtors in these chapter 11 cases are: ProtoStar Ltd., ProtoStar I Ltd., ProtoStar II Ltd., ProtoStar Satellite Systems, Inc., ProtoStar Development Ltd., and ProtoStar Asia Pte. Ltd.

adversary complaint pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure, respectfully alleges as follows:

## SUMMARY OF PROCEEDING

1.      By its amended adversary complaint, the Committee seeks to avoid, recover and otherwise contest the extent and validity of liens allegedly securing the WC Facility (as hereinafter defined) and the Secured Notes (as hereinafter defined) extended to ProtoStar I Ltd. ("PS 1").  The primary asset of PS 1 is a geostationary commercial communications satellite (the "PS 1 Satellite") orbiting over and about South and Southeast Asia and designed to lease capacity to Asian DTH (direct-to-home) and broadband service providers.  Other PS 1 assets include a contractual right to an orbital slot for the PS 1 Satellite (the "Slotting Right"), and certain ground equipment (the "Ground Equipment" and, together with the PS 1 Satellite, the Slotting Right and substantially all other assets owned by PS 1, the "PS 1 Assets") utilized to support and assist in the operation of the PS 1 Satellite, which Ground Equipment is located in Seletar, Singapore, Belrose, Australia, Subic Bay, Philippines, Noida, India, and Kumsan, South Korea (the "Ground Equipment Jurisdictions").

2.      The Prepetition Lenders purported to take a security interest in the PS 1 Assets and, in an attempt to perfect that security interest, filed Uniform Commercial Code ("UCC") financing statements in the District of Columbia and filed the equivalent of UCC-1 financing statements with the Registrar of Companies in Bermuda. However, because (a) PS 1 operates from at least two different locations, (b) PS 1's "chief executive office" is, and always has been, located in California, and (c) the Prepetition Lenders did not file a UCC financing statement in California pursuant to N.Y. Uniform Commercial Code §§ 9-301(1) and 9-307(b)(3)[2], the Prepetition Lenders have not properly perfected their security interests in the PS 1 Assets and such security interests are avoidable for the benefit of the estate pursuant to 11 U.S.C. §544(a).

---

[2]     The parties choose New York law as the governing law in connection with the WC Facility and the Secured Notes.

3.      Moreover, as to the Ground Equipment, the PS 1 Satellite, and the Slotting Right, even if the security interest of the Prepetition Lenders was perfected by filings in Washington, D.C. and Bermuda, which it was not, the effect and priority of such security interest would be governed by the law of the jurisdiction in which such PS 1 Assets are located pursuant to N.Y. Uniform Commercial Code §9-301(b).  Because the Prepetition Lenders failed to take any steps to perfect or establish the priority of their security interests in the Ground Equipment in the Ground Equipment Jurisdictions, such security interest is avoidable for the benefit of the estate pursuant to 11 U.S.C. §544(a).  Further, because the Prepetition Lenders failed to take any steps to perfect or establish the priority of their security interests in the jurisdiction in which the PS 1 Satellite and Slotting Right are located, or deemed to be located, such security interest is also avoidable for the benefit of the estate pursuant to 11 U.S.C. §544(a).

4.      By this Complaint, the Committee also objects to all claims filed or asserted by the Prepetition Lenders in the PS 1 case.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 151, 157, and 1334.

6.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409 because this adversary proceeding arises under and in connection with a case pending in this District under title II of the United States Code.  This adversary proceeding constitutes a "core" proceeding pursuant to 28 U.S.C. §157(b).

7.      The statutory predicates for the relief requested are Bankruptcy Rule 7001 and sections 105, 502, 506 and 544 of the Bankruptcy Code.

## PARTIES

8.      Plaintiff is the Official Committee of Unsecured Creditors duly appointed by the United States Trustee for this District on August 10, 2009.  Plaintiff brings this proceeding: (a) with the permission of the Court on behalf of the Debtors' chapter 11 estates as relates to

Counts One, Two and Three seeking avoidance of the security interests of the Prepetition Lenders under section 544(a) of the Bankruptcy Code, (b) in the Committee's own right, as relates to Count Four objecting to the claims of the Prepetition Lenders under section 502 of the Bankruptcy Code and, (c) to the extent that the Committee becomes the assignee of the rights of some or all of the unsecured creditors, in the right of such assignors.

9.      Upon information and belief, Defendant The Bank of New York Mellon (as successor in interest to The Bank of New York) ("BNYM"), is the trustee and collateral agent for the Secured Note Holders under the Secured Notes Indenture.

10.      Upon information and belief, Defendant Wells Fargo Bank, National Association ("Wells Fargo"), is the administrative agent for the lenders under the Debtor-In-Possession Credit Agreement, dated as of July 31, 2009, and has its principal place of business at 101 Park Avenue, New York, New York 10178.  Wells Fargo is named as a party only to the extent the "roll-up" of the WC Facility (defined below) is unwound, as permitted under the PS 1 Final DIP Order (as defined below), if the pre-petition liens securing the WC Facility are set aside.

11.      Upon information and belief, Defendant Beach Point Capital Management, LP is one of PS 1's alleged secured lenders and a beneficiary of the liens granted to Wells Fargo and one of the owners of approximately 70% of the secured notes and a beneficiary of the liens granted to BNYM.

12.      Upon information and belief, Defendant Blackrock Financial Management Inc. is one of PS 1's alleged secured lenders and a beneficiary of the liens granted to Wells Fargo and one of the owners of approximately 70% of the secured notes and a beneficiary of the liens granted to BNYM.

13.      Upon information and belief, Defendant Farallon Partners, L.L.C. is one of PS 1's alleged secured lenders and a beneficiary of the liens granted to Wells Fargo and one of the owners of approximately 70% of the secured notes and a beneficiary of the liens granted to BNYM.

14.     Upon information and belief, Defendant Octavian Advisors LP is one of PS 1's alleged secured lenders and a beneficiary of the liens granted to Wells Fargo and one of the owners of approximately 70% of the secured notes and a beneficiary of the liens granted to BNYM.

15.     Upon information and belief, Defendant Third Point LLC is one of PS 1's alleged secured lenders and a beneficiary of the liens granted to Wells Fargo and one of the owners of approximately 70% of the secured notes and a beneficiary of the liens granted to BNYM.

16.     Upon information and belief, Defendant West Face Capital Inc. is one of PS 1's alleged secured lenders and a beneficiary of the liens granted to Wells Fargo and one of the owners of approximately 70% of the secured notes and a beneficiary of the liens granted to BNYM.

17.     Defendants ABC Companies include, but may not be limited to, all financial institutions not otherwise identified as a Defendant who are parties to the Prepetition Credit Facility.

## FACTS COMMON TO ALL COUNTS

### A.     Introduction

18.     PS 1 was formed under the laws of Bermuda as an exempted company with its chief executive offices located in San Francisco, California.

19.     The PS 1 Satellite is owned by PS 1 and is in orbit over South and Southeast Asia.

20.     The Ground Equipment is owned by PS 1 and is located in the Ground Equipment Jurisdictions.

21.     The Slotting Right is owned by PS 1.

**B.**     **The Chapter 11 Filings And Appointment Of The Committee**

22.     On July 29, 2009 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

23.     No trustee or examiner has been appointed in the Debtors' bankruptcy cases.

24.     On August 10, 2009, the Office of the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.  A notice identifying the individual members of the Committee was filed on the docket on August 11, 2009 [Docket No. 98].

25.     The Committee selected Lowenstein Sandler PC as its counsel, Greenberg Traurig LLP as its local counsel, and Bank Street Group LLC as its financial advisor.

**C.**     **Pre-Petition Indebtedness**

*a.*     *Working Capital Facility.*

26.     Prior to the Petition Date, PS 1, as Borrower, and ProtoStar Ltd., as Guarantor, were parties to that certain Credit Agreement, dated as of March 28, 2007 (as amended by Amendment No. 1, dated as of July 5, 2007, Amendment No. 2, dated as of February 23, 2009, and Amendment No. 3, dated as of May 29, 2009, and as otherwise amended, restated, or supplemented, the "WC Agreement"), together with BNYM, as first lien collateral agent (the "Prepetition First Lien Collateral Agent"), Canyon Capital Partners, LLC, as administrative agent for the WC Lenders and certain financial institutions from time to time that were party thereto (the "WC Facility").

27.     The WC Agreement and all obligations under the WC Facility were secured by alleged first priority security interests, subject to any permitted liens, in (i) substantially all of the PS 1 Assets, including the PS 1 Satellite, the Slotting Right and the

Ground Equipment, and (ii) the equity interests of PS 1 held by ProtoStar Ltd. (collectively, the "PS 1 Collateral") and the proceeds thereof.

28.     The obligations under the WC Agreement were alleged to be unsecured against ProtoStar Ltd., other than ProtoStar Ltd's pledge of its equity interests in PS 1 as described above.

29.     As of the Petition Date, the outstanding principal balance under the WC Agreement was alleged to be $10,000,000.

30.     Upon information and belief, the outstanding principal balance under the WC Agreement, as of the Petition Date, was alleged to be held by certain of the Secured Noteholders (as defined below).

b.     *PS 1 Secured Notes.*

31.     PS 1 issued $160,000,000 of 12.5% Senior Secured Convertible Notes due 2012 (the "12.5% Secured Notes" and the holders thereof, from time to time, the "12.5% Noteholders"), pursuant to that certain indenture, dated as of September 28, 2006 (as amended by the Supplemental Indenture, dated as of February 23, 2009, and as otherwise amended, modified and supplemented from time to time (the "Secured Notes Indenture"), between PS 1, as issuer, ProtoStar Ltd., as guarantor, and BNYM, as indenture trustee (the "Indenture Trustee").

32.     BNYM also acts as collateral agent under the Guarantee and Security Agreement, dated as September 28, 2006 (as amended, modified and supplemented from time to time), among PS 1, ProtoStar Ltd., as guarantor, and BNYM (the "Prepetition Secured Notes Collateral Agent").

33.     The obligations under the Secured Notes (as defined below) are alleged to be secured by security interests, subject to permitted liens, in, the PS 1 Collateral.  The obligations under the Secured Notes are alleged to be unsecured against ProtoStar Ltd., other than ProtoStar Ltd's pledge of its equity interests in PS 1 as described above.

34.      On February 23, 2009, PS 1 offered the 12.5% Noteholders the opportunity to exchange the 12.5% Secured Notes for new notes (with the same collateral package) bearing interest at 18.0% (the "18.0% Secured Notes," and together with the 12.5% Secured Notes, the "Secured Notes," and the holders thereof, from time to time, the "18.0% Noteholders," and together with the 12.5% Noteholders, the "Secured Noteholders").   The Secured Notes together with the WC Facility are collectively referred to as the "Prepetition Credit Facility"

35.      As of the Petition Date, the outstanding principal amount of the Secured Notes was alleged to be approximately $182.7 million.

**D.      The PS 1 Final DIP Order**

36.      On August 24, 2009, the Bankruptcy Court entered a final order [Docket No. 162] (the "PS 1 Final DIP Order"), pursuant to which the Debtors were authorized to incur debtor in possession financing under that certain Debtor-In-Possession Credit Agreement (as amended in accordance with the terms thereof and the terms of the PS 1 Final DIP Order), by and among ProtoStar Ltd., as borrower, and PS 1, as guarantor, Wells Fargo, as administrative agent for itself and the lenders thereunder, approved by the Bankruptcy Court pursuant to the PS 1 Final DIP Order.

37.      Pursuant to the PS 1 Final DIP Order, the Debtors were authorized to draw funds under the approved DIP facility to pay off the WC Facility, subject to the Committee's reservation of rights to challenge the extent, priority and validity of the WC Lenders' liens.  The PS 1 Final DIP Order expressly provided that repayment of the WC Facility would not moot out the Committee's lien review rights and that in the event that the WC Lenders' liens were successfully challenged, that portion of the DIP applied to payoff the WC Facility would be recharacterized.

**E.**      **The Prepetition Lenders' Liens Are Not Perfected**

38.      With respect to the Secured Notes, a UCC-1 financing statement (as amended by the UCC-3 financing statement filed on March 30, 2007) showing BNYM as the "secured party" was filed in the District of Columbia dated October 2, 2006, purporting to perfect liens against certain assets of PS 1.

39.      With respect to the WC Facility, a UCC-1 financing statement showing BNYM as the "secured party" was filed in the District of Columbia dated March 30, 2007, purporting to perfect liens against certain assets of PS 1.

40.      According to the WC Agreement and Secured Notes Indenture, the loan documents and obligations are to be governed by, and construed and enforced in accordance with, the laws of the State of New York.

41.      Pursuant to N.Y. Uniform Commercial Code § Section 9-301(a), the law of the jurisdiction in which the debtor is "located" governs perfection of non-possessory security interests in collateral.

42.      Pursuant to N.Y. Uniform Commercial Code § 9-307(b)(3), if the debtor has more than one place of business, the debtor will be deemed to be located at its "chief executive office."

43.      PS 1 has, at all time relevant hereto, had more than one place of business.

44.      PS 1 currently maintains, and all times relevant hereto, maintained, its chief executive offices in San Francisco, California.

45.      Evidence establishing the fact that PS 1 maintains, and has always maintained, its chief executive office in San Francisco, California includes the following:

 (a) The address in Bermuda used by PS 1 is the office of its Bermuda attorneys, Appelby Global.  Neither PS 1, nor any of the Debtors, conduct operations from or are physically present in Bermuda.

(b) The Debtors, including PS 1, have an actual physical presence in California, and occupy office space located at 100 California Street, Suite 700, San Francisco, California 94111 (the "California Address").

(c) PS 1's senior executive officers maintain their offices in California.  For example, Philip R. Father, President and CEO of PS 1, lists the California Address, *and no other address*, on his business card.  Similarly, other present and former senior officers of PS 1, including Charles Sweeney, Executive V.P. and CFO, Craig Gavin, V.P. of Operations, and Reid Stephenson, VP of Marketing and Government Affairs, each listed the California Address, *and no other address*, on their respective business cards.  Copies of the business cards are attached as Exhibit 1.

(d) The critical Launch Services Agreement that PS 1 entered into with Arianespace for the launching of the PS 1 Satellite into orbit, attached hereto as Exhibit 2, provides, in relevant part:

> *        *        *
>
> PROTOSTAR 1 LTD, hereinafter referred to as "CUSTOMER", a company duly organized and validly existing under the laws of Bermuda, located at Canon's Court 22 Victoria Street, P.O. Box HM 1179 Hamilton HM 12 Bermuda, <u>with principal offices located at 100 California Street, Suite 700 San Francisco, California 94111 USA</u>, which is a wholly-owned subsidiary of ProtoStar Ltd.,
>
> *        *        * (emphasis added)

(e) PS 1 regularly holds itself out to third parties (<u>e.g.</u>, customers and vendors) as being located and transacting its business from the California Address.  For example, certain of the launch and "in orbit" insurance policies obtained for the PS 1 Satellite (relevant pages are attached hereto as Exhibit 3), reflect PS 1 as the "insured" and list the California Address, *and no other address*, as the insured's address.

(f) PS 1 regularly receives its mail at the California Address.  For example, one particular critical piece of mail from Intersputnik International Organization of Space

Communications, attached hereto as Exhibit 4, concerning the repositioning of the PS 1 Satellite, was addressed as follows:

> Mr. Philip Father
> President and Chief Executive Officer
> ProtoStar I Ltd.
> 100 California Street, Suite 700
> San Francisco, California  94111 USA

46.    Furthermore, as evidenced by the wire transfer confirmations attached hereto as Exhibit 5, PS 1 maintains its bank accounts in California at a branch of Wells Fargo, located in San Francisco.

47.    As a result of the Prepetition Lenders' failure to file UCC financing statements in California, the location of PS 1, the Prepetition Lenders' security interests are not perfected as to the PS 1 Assets.

## <u>COUNT ONE</u>
### (Avoidance And Preservation Of Security Interests Under Section 544 Of The Bankruptcy Code)

48.    The Committee repeats and reiterates each of the foregoing allegations as if set forth at length herein.

49.    Pursuant to section 544(a)(1) of the Bankruptcy Code, the bankruptcy estate has the rights and powers of, and may avoid any obligation incurred by the estate that is voidable by, a hypothetical judicial lien creditor who has properly levied on the estates' property.

50.    The Committee can avoid all security interests that were not properly perfected under applicable state law.

51.    As a result of the Prepetition Lenders' failure to file UCC financing statements in California, the Prepetition Lenders' security interests are not perfected as to the assets of PS 1.

52.    Therefore, any security interest in the Prepetition Lenders' favor arising from the WC Agreement and Secured Notes Indenture on the PS 1 Assets is void under applicable state law and 11 U.S.C. §544.

## COUNT TWO
### (Recovery And Preservation Of Avoided Transfers Under Sections 550 And 551 Of The Bankruptcy Code)

53.     The Committee repeats and reiterates each of the foregoing allegations as if set forth at length herein.

54.     Pursuant to section 550 of the Bankruptcy Code, a bankruptcy estate may recover any and all transfers avoided under section 544 of the Bankruptcy Code.

55.     Pursuant to section 551 of the Bankruptcy Code, the Prepetition Lenders' avoided security interests are preserved for the benefit of the Debtors' bankruptcy estates.

## COUNT THREE
### (Even If Perfected Under The N.Y. Uniform Commercial Code, The Prepetition Lenders' Security Interests Are Not Effective Or Do Not Have Priority Over The Rights Of The PS 1 Estate As Lien Creditor In The Ground Equipment, PS 1 Satellite And Slotting Right)

56.     The Committee repeats and reiterates each of the foregoing allegations as if set forth at length herein.

57.     Pursuant to Section 544(a) of the Bankruptcy Code, the PS 1 estate is afforded the rights of a lien creditor on all of the PS 1 Assets.

58.     In the event it is determined that the Prepetition Lenders properly perfected their security interests pursuant to N.Y. Uniform Commercial Code § 9-301(b) in the PS 1 Assets, which they did not, the effect and priority of such security interests in the Ground Equipment (as compared to the priority of the hypothetical lien afforded to the PS 1 estate and enforced by the Committee hereunder) is governed by the law of the Ground Equipment Jurisdictions.

59.     As the Prepetition Lenders have taken no steps to establish the perfection or priority of their security interests in the Ground Equipment Jurisdictions, the security interests of the Prepetition Lenders do not have priority over the hypothetical lien asserted by the Committee on behalf of the PS 1 estate under Section 544(a) of the Bankruptcy Code.

60.     In the event it is determined that the Prepetition Lenders properly perfected their security interests pursuant to N.Y. Uniform Commercial Code § 9-301(b) in the

PS 1 Satellite and Slotting Right, which they did not, the effect and priority of such security interest (as compared to the priority of the hypothetical lien afforded to the PS 1 estate and enforced by the Committee hereunder) is governed by the law of the jurisdiction where the PS 1 Satellite and the Slotting Right are located, or are deemed to be located.

61.     As the Prepetition Lenders have taken no steps to establish the perfection or priority of their security interests in the PS 1 Satellite and the Slotting Right in the jurisdiction in which they are located, or deemed to be located, the security interests of the Prepetition Lenders do not have priority over the hypothetical lien asserted by the Committee on behalf of the PS 1 estate under Section 544(a) of the Bankruptcy Code.

## COUNT FOUR
### (Objection To The Prepetition Lenders Claims Pursuant To Section 502(a))

62.     The Committee repeats and reiterates each of the foregoing allegations as if set forth at length herein.

63.     Pursuant to Section 502(a) of the Bankruptcy Code, the Committee objects to and seeks to disallow all claims filed or asserted by the Prepetition Lenders in the PS 1 case.

## RESERVATION OF RIGHTS

64.     The Committee believes that additional claims in favor of one or more of the Debtors' estates against the Defendants and/or other parties may exist.  Specifically, and without limitation, the Committee believes that a colorable basis exists to equitably subordinate the liens and claims of the Defendants.  The Committee is currently undertaking discovery on these issues, and will amend this Complaint as appropriate.  Hence, the Committee reserves any and all rights to bring any and all such claims (and other claims) to the extent authorized by the Court and/or applicable law.

**WHEREFORE**, the Committee demands judgment pursuant to, *inter alia*, sections 506, 544 and 550 of the Bankruptcy Code, in its favor and against the Defendants as follows:

(a)    avoiding all security interests asserted by the Prepetition Lenders on the PS 1 Assets;

(b)    directing that any unencumbered assets or the proceeds thereof that were conveyed to the Defendants by the Debtors on account of pre-petition secured claims during these chapter 11 cases be disgorged and returned to the estates;

(c)    recovering any and all transfers avoided;

(d)    preserving and transferring under section 551 of the Bankruptcy Code the liens and security interests securing the WC Facility and the Secured Notes for the benefit of, and ownership by, the Debtors' bankruptcy estates;

(e)    fixing the value of the pre-petition indebtedness;

(f)    recharacterizing as pre-petition unsecured debt that portion of the advances made under the Debtors' debtor-in-possession financing facility to "roll-up" the WC Facility;

(g)    disallowing under section 502(a) of the Bankruptcy Code all claims filed by the Prepetition Lenders;

(h)    awarding costs of suit and reasonable attorneys' fees; and

(i)    awarding such other and further relief as the Court deems equitable and proper.


Respectfully submitted,


Dated:  November 12, 2009                    By: */s/ Jason C. DiBattista*

**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen, Esq.
Jeffrey D. Prol, Esq.
Jason C. DiBattista, Esq.
65 Livingston Avenue
Roseland, New Jersey  07068
Tel:  (973) 597-2500
Fax: (973) 597-2400
*Co-Counsel to the Official Committee of Unsecured Creditors*